UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOAN KONSAVAGE,                          :
                                         :CIVIL ACTION NO. 3:15-CV-1155
          Plaintiff,                     :
                                         :(JUDGE CONABOY)
          v.                             :
                                         :
MONDELEZ GLOBAL LLC, d/b/a               :
MONDELEZ INTERNATIONAL INC.,             :
                                         :
          Defendnat.                     :
                                         :

_____

**MEMORANDUM**

Motion of Defendant, Mondalez Global LLC, for Summary Judgment (Doc. 34) is pending before the Court. With this motion, Defendant seeks to have this action dismissed in its entirety with prejudice. (Doc. 35 at 15.)  In her Second Amended Complaint, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA") in that she was demoted and terminated because of her age or gender and/or complaints of discrimination.  (Doc. 8 ¶ 1.)  For the reasons discussed below, the Court concludes that disputed issues of material fact preclude the entry of summary judgment and therefore, Defendant's motion is granted in part and denied in part.

## I. Background

Defendant's predecessor company, Nabisco, hired Plaintiff in July 1983.  (Doc. 32 ¶ 10; Doc. 40-1 ¶ 10.)  Nabisco was later

acquired by Kraft Foods, and Defendant Modelez Global LLC was formed after Kraft split into two independent companies in October 2012. (Doc. 32 ¶ 11; Doc. 40-1 ¶ 11.)

Robert Desciak was Plaintiff's superior responsible for her performance evaluations through January 2013.[1] (Doc. 40-2 ¶¶ 11-15.) His evaluations were consistently positive. (Doc. 40-2 ¶¶ 11-13.) In early 2013, Plaintiff came under the direct supervision of Mike Peterson, Director of Customer Service Operations, who in turn reported to David Augustin, Senior Director of Customer Service and Operations. (Doc. 40-2 ¶¶ 15-16.)

Plaintiff testified that problems began to develop a few months later. (Doc. 40-2 ¶ 17.) By way of example, Plaintiff avers the following: Mr. Peterson and Mr. Augustin referred to her work area and older employees as "dead wood"; Mr. Peterson told Plaintiff to "step aside [and] let the younger people shine, you've

---

[1] In Plaintiff's Counter Statement of Material and Disputed Facts (Doc. 40-2), she provides considerable additional factual material, including detail of the period between the formation of Modelez Global LLC in October 2012 and her demotion/termination in 2014. The assertions contained in this document include citation to the record and are included to provide background information regarding a relevant time period. (*Id.*) Disputes regarding matters asserted will be addressed as warranted in the Discussion section of the Memorandum. Defendant's request to have the Court strike Plaintiff's Counter Statement or, alternatively, to be allowed permission to respond to the Counter Statement (Doc. 44-2 n.1) is not properly raised and will not be further addressed by the Court except to note that disputed facts must be viewed in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), so any dispute Defendant may have with a fact asserted by Plaintiff would not alter the disposition of the pending motion.

pretty much done everything you can do here"; Mr. Peterson said
"[y]ou have no potential at your age[,] [y]ou lack learning
ability[,] [y]ou lack agility"; Mr. Peterson told Plaintiff she had
"been there too long" and he was building a "new team"; and Mr.
Peterson told Plaintiff not to speak at staff meetings, saying "I
need you to just not talk[,] [w]e don't really want to hear what
you have to say."  (Doc. 40-2 ¶¶ 18-23.)  Plaintiff also avers that
Mr. Peterson made derogatory remarks about female employees and
turned regular staff meetings into "a frat house," passing around
pictures of women, a man in a speedo, discussing that Mr. Peterson
kept a picture of a blonde woman in the top drawer of his desk, he
made additional sexist remarks, told sexist stories, and allowed
others to do the same.  (Doc. 40-2 ¶¶ 27-32.)  These allegations
were denied by Mr. Peterson and Mr. Augustin.  (Doc. 40-2 ¶ 39.)
Plaintiff also alleges that she complained about these matters
directly to Mr. Peterson, relayed her concerns to Mr. Augustin, and
approached Amy Suda-Ruskey, the Assistant Human Resources Manager,
in September/October 2013.  (Doc. 40-2 ¶¶ 34, 40-44.)  Ms. Suda-
Ruskey, who voluntarily left her employment with Defendant in
October 2013, verified that Plaintiff had complained to her about
ageist and sexist behavior and she escalated them to her direct
superior, Sherry Lynch, who, in turn, escalated the complaints
higher up the chain of command and discussed them with Mr.
Augustin.  (Doc. 40-5 at 42.)

3

In or about October of 2013, Sabrina Greenwald took over Ms. Suda-Ruskey's position.  (Doc. 40-2 ¶ 49.)  Plaintiff avers that Mr. Peterson informed his team that they were not to go to Ms. Greenwald and any concerns should be expressed directly to him. (Doc. 40-2 ¶ 50.)  Plaintiff also avers that in late spring or early summer 2014 (shortly before her demotion occurred) she went to Ms. Greenwald about inappropriate comments made by Mr. Peterson, Ms. Greenwald told her to work out any issues directly with Mr. Peterson, and subsequent attempts to meet with Ms. Greenwald failed.  (Doc. 40-2 ¶¶ 51-53.)

By June 2014, Plaintiff was the Manager of Critical Inventory, a salary grade 12 position.  (Doc. 32 ¶ 12; Doc. 40-1 ¶ 12.)  She worked out of Defendant's Wilkes-Barre location and continued to report to Mike Peterson.  (Doc. 32 ¶ 12; Doc. 40 at 6.) Following the split of Kraft foods, many jobs were evaluated for compensation purposes, including Plaintiff's.  (Doc. 32 ¶¶ 13, 15; Doc. 40-1 ¶¶ 13, 15.)  Defendant asserts the purpose was to ensure that jobs of similar levels of responsibility were compensated in a consistent manner across the company and were competitive within the industry; Plaintiff asserts that the actions at issue were not taken as a result of any legitimate compensation review but rather at managements' discretion in an effort to demote her.  (Doc. 32 ¶ 14; Doc. 40-1 ¶¶ 14-16.)

In May 2014, Sabrina Greenwald was Defendant's on-site Human

Resources ("HR") manager at the Wilkes-Barre location.  (Doc. 32 ¶ 16; Doc. 40-1 ¶ 11.)  In e-mail exchanges dated May 5th and 6th, Ms. Greenwald corresponded with Lauren Matloscz, Defendant's Senior Compensation Analyst located in New Jersey, regarding the position description and compensation for the Cash Application/Credit Team Lead position.  (Doc. 32-9 at 2-3.)  In the last entry of the e-mail chain, Ms. Greenwald stated "Wilkes-Barre will be looking at different positions across the organization in the next month or two so that I will be sending over a few more once we have completed the evaluations from the business perspective."  (Doc. 32-9 at 2.)  Plaintiff contends that the review discussed in the May e-mail chain was a compensation review for an open position, adding that compensation re-grading occurs and Mr. Augustin conceded it would be rare that a person's salary would be negatively impacted in the re-grading process which is what happened to Plaintiff.  (Doc. 40-1 ¶ 16 (citing Augustin Dep. 53:7-9 (Doc. 32-7 at 11).)

Mr. Peterson initiated the request that Plaintiff's position be reviewed and Ms. Greenwald corresponded with the compensation review team, who approved the downgrade of Plaintiff's position.  (Doc. 32 ¶ 17.)  The compensation team is separate from the Wilkes-Barre HR team and sits in East Hanover, New Jersey, and Deerfield, Illinois.  (Doc. 32 ¶ 18.)  Plaintiff states that Mr. Peterson, together with Ms. Greenwald and Mr. Augustin "made specific

5

alterations in Plaintiff's then job description (including glaring falsities) such that her position would align with a grade 10 vs a 12."   (Doc. 40-1 ¶ 17.)   She also states that the makeup of the compensation team is immaterial as the information being supplied to the team "was inaccurate and misleading and a clear manipulation of Plaintiff's job description."  (Doc. 40-1 ¶ 18.)

On June 23, 2014, Plaintiff's position was downgraded from a salary level 12 (manager) to a salary level 10 (team lead) and her compensation was reduced by $9,000 per year (Plaintiff emphasizes the decrease was over $9,000).  (Doc. 32 ¶ 19; Doc. 40-1 ¶ 19.) Plaintiff's position was one of many that was reviewed in the Wilkes-Barre office.  (Doc. 32 ¶ 20; Doc. 40-1 ¶ 20.)  Plaintiff adds that

> [d]uring discovery, Defendant could not provide proof that even one other individual suffered any economic loss in relation to such compensation reviews as did Plaintiff; i.e. their positions either increased, or the position which was downgraded was vacant when reviewed, or a person was only demoted in salary as a result of genuine performance concerns (which was not the case here), and/or their salary grade changed, but their actual compensation was not impacted.

(Doc. 40-1 ¶ 20.)  Plaintiff denies Defendant's averment that her position downgrade was related solely to the review of Plaintiff's job position and its responsibilities.  (Doc. 32 ¶ 21; Doc. 40-1 ¶ 21.)

On August 6, 2014, Mr. Peterson received what Defendant

6

characterizes as an "anonymous" letter (Doc. 32 ¶ 22); Plaintiff

contends that a reasonable factfinder would not conclude the letter

was "anonymous" because the contents of the letter readily

identified the author to be Dawn Booth, one of Plaintiff's

subordinates who was actively being disciplined by her (Doc. 40-1 ¶

22).  The letter expressed "serious concerns" about Plaintiff's

performance as a manager and condemned Plaintiff's conduct with

specific examples, including the following:

> My first major concern and maybe the biggest
> issue was during the unleashment survey.
> Joan told the team to make sure they give her
> a good rating on all categories because any
> negatives will impact the department and the
> department may receive a bad rating.  My
> knowledge of the unleashment survey is to
> allow the managers to learn where they can
> improve.  This has absolutely skewed her
> results and impacts the department, while
> also devaluing our core values and inspiring
> trust with you and her direct reports.
> Additionally, the survey was meant to be
> confidential and on a volunteer basis.  She
> violated this by approaching employees and
> asking if they completed the survey and
> proceeded to called [sic] out another
> employee for not completing the survey.

(Doc. 32 ¶ 24 (quoting Ex. 13).)  The letter also criticized

Plaintiff for micromanaging her team, being inflexible with her

team's schedule, and being out of touch with the company's values.

(Doc. 32 ¶ 26.)

Defendant avers that Mr. Peterson immediately took the letter

to Ms. Greenwald, who conducted an investigation of the allegations

contained in the letter with input and oversight from her

7

supervisor, Marc Rishor.  (Doc. 30 ¶ 27.)  Plaintiff asserts that
Ms. Greewald denied that she had input and oversight from her
supervisor.  (Doc. 40-1 ¶ 27.)  Defendant states that the
investigation consisted of interviewing the members of Plaintiff's
team and Plaintiff, obtaining follow up information from Mr.
Peterson, ensuring consistent treatment across the company, and
forming a recommendation for action.  (Doc. 32 ¶ 28.)  Plaintiff
responds that Ms. Greenwald interviewed everyone on her team before
anyone spoke with her about the letter, Plaintiff denies that the
goal of the investigation was to ensure consistent treatment across
the company, and Mr. Peterson contends he was never made privy to
the nature of the interviews conducted by these team members.
(Doc. 40-1 ¶ 28.)

The interviews were confidential and conducted without notice.
(Doc. 32 ¶ 30; Doc. 40-1 ¶ 30.)  Defendant asserts that three of
the eight subordinates of Plaintiff (Booth, Lesnesky and Reese)
confirmed the allegation that Plaintiff had requested only positive
feedback on the survey.  (Doc. 40-1 ¶ 31.)  Plaintiff responds
that the statements referenced are based on Ms. Greenwald's own
"notes summary" which does not accurately reflect the original
handwritten notes she generated during the interviews.  (Doc. 40-1
¶ 31.)  The three individuals who confirmed allegations were
deposed and testified that Plaintiff had attempted to skew the
survey results.  (Doc. 32 ¶ 35.)  Plaintiff does not dispute this

8

averment but points to the fact that the opinion that Plaintiff was "coercing" her team is not based on interviews with all team members.  (Doc. 40-1 ¶ 35.)

As part of her investigation, Ms. Greenwald interviewed Plaintiff; beyond agreeing that the survey was discussed, the parties disagree about what transpired at the meeting, including Defendant's averment that Plaintiff denied that she worked from home.  (Doc. 32 ¶¶ 37-43; Doc. 40-1 ¶¶ 37-43.)  The parties also disagree about the meeting follow-up, including the reason proffered for Plaintiff's termination: Defendant asserts that Plaintiff's alleged dishonesty during her interview and her attempts to change survey results prompted Ms. Greenwald to recommend to Mr. Peterson and Mr. Augustine that Plaintiff be terminated, a recommendation with which they agreed; Plaintiff specifically denies any dishonesty during her interview and any contention that she attempted to change survey results.  (Doc. 32 ¶¶ 45-47; Doc. 40-1 ¶¶ 45-47.)

Plaintiff was terminated on September 26, 2014.  (Doc. 32 ¶ 48; Doc. 40-1 ¶ 48.)  The termination letter cited Defendant's Code of Conduct and included the following content:

> A formal investigation was conducted
> surrounding allegations that you asked your
> team to give good ratings during an
> unleashment survey because any negatives will
> impact the department and the department's
> ratings.  This claim was substantiated that
> you asked your team to provide you feedback
> directly versus providing this on the

> Bringing Out the Best in Others Survey.
>
> In addition, during our conversation on August 27, 2014 where you were informed of the investigation and as an employee of Mondelez International, you were informed to be honest, not retaliate, and maintain strict confidentiality.  We have determined that you were not honest during the investigation in multiple situations.
>
> As a result, your employment with the Company is terminated immediately.

(Doc. 32-34 at 2; Doc. 32 ¶ 49; Doc. 40-1 ¶ 49.)

Regarding exhaustion of administrative remedies, Plaintiff agrees with Defendant's timeline, including that her EEOC Charge of Discrimination was filed on March 9, 2015--259 day after the position downgrade.   (Doc. 32 ¶ 55; Doc. 40-1 ¶ 55; Doc. 40-1 at 9 n.3.)   Plaintiff concedes that her PHRA claim related to her demotion was not timely and, therefore, she does not proceed on that PHRA claim.  (Doc. 40-1 at 9 n.3.)

## II. Discussion

Defendant asserts that this case should be dismissed in its entirety for the following reasons: 1) the Court should enter summary judgment on Plaintiff PHRA claims related to the downgrade of her position because she failed to timely exhaust her administrative remedies; 2) the Court should enter summary judgement on Plaintiff's claims of age discrimination under the ADEA and PHRA and her claims of gender discrimination under Title VII and the PHRA because she cannot overcome the legitimate and

non-discriminatory reasons proffered by Defendant for Plaintiff's termination and position downgrade; and 3) the Court should enter summary judgment on Plaintiff's retaliation claims because there is no temporal proximity between the protected activity (complaints about discriminatory comments) and the adverse employment action (termination) and there is no other protected activity at issue. (Doc. 35 at 2.)

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Such inferences "must flow directly from admissible

evidence." *Halsey*, 750 F.3d at 287.

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324. "The non-moving party must show where in the record there exists a genuine dispute over a material fact.'" *Hankins v. Wetzel*, 640 F. App'x 130, 132 (3d Cir. Jan. 6, 2016) (not precedential) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)). "A mere 'scintilla of evidence in support of the [non-moving party]'s position will be insufficient' to create a genuine issue of fact." *Hankins*, 640 F. App'x at 132 (quoting *Anderson*, 477 U.S. at 252)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses

may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## A.   *PHRA Demotion Claim*

Plaintiff agrees that her PHRA demotion claims are untimely and she does not proceed on basis.  (Doc. 40 at 13 n.5.)  Therefore summary judgment is warranted on PHRA claims based on Plaintiff's demotion.

## B.   *Age and Gender Discrimination*

Defendant contends that, assuming *arguendo*, Plaintiff has established a *prima facie* case of discrimination, she cannot show that Defendant's proffered legitimate reasons for its actions were pretextual.  (Doc. 35 at 6-10; Doc. 44 at 1-7.)  Plaintiff responds that she has presented ample evidence of pretext.  (Doc. 40 at 20-30; Doc. 52 at 2-6.)  The Court concludes Defendant has not shown it is entitled to summary judgment on this issue.

The parties agree that the three-part burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Plaintiff's claims of gender discrimination (Doc. 35 at 6; Doc. 40 at 15) but they differ as to the standard to be used in analyzing Plaintiff's age discrimination claims: Defendant asserts that *McDonnell Douglas* applies because there is no direct evidence of age discrimination (Doc. 35 at 6); Plaintiff responds that the Court need not proceed under the *McDonnell Douglas* standard when analyzing her age discrimination claims because she has presented

13

direct evidence of age discrimination (Doc. 40 at 15 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002))).  Because of this discrepancy we will first look at the standard applicable to Plaintiff's age discrimination claims.

ADEA and PHRA claims are analyzed under the same standard. *See*, *e.g.*, *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010).  As a result, the Court generally references only the ADEA in this Memorandum.

As summarized in *Palmer v. Britton Industries, Inc.*, No. 16-1010, ---F. App'x---, 2016 WL 6575073 (3d Cir. Nov. 7, 2016) (not precedential), "[t]he Federal Age Discrimination in Employment Act prohibits employers from taking adverse action against an employee who is at least 40 years old, 29 U.S.C. § 631(a), 'because of such individual's age.' 29 U.S.C. § 623(a)."  The "[p]laintiff ha[s] the burden to show that his 'age was the 'but-for' cause of the employer's adverse action.'"  *Id.* at *2 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  *Palmer* further explained that

> [i]t was not enough to show that his age was
> a factor motivating the decision to fire him.
> Instead, [the plaintiff] had to point to
> summary judgment evidence supporting an
> inference that his age had a 'determinative
> influence' on the decision. [*Gross*, 557 U.S.]
> at 176 . . . (quoting *Hazen Paper Co. v.
> Biggins*, 507 U.S. 604, 610 . . . (1993))
> (emphasis omitted).  This burden remained
> with [the plaintiff]; he could meet it
> through direct or circumstantial evidence.
> *Id.* at 177.

14

2016 WL 6575073, at *2.

Plaintiff agrees that absent direct evidence the *McDonnell Douglas* analysis applies to age discrimination cases. (Doc. 40 at 15, 18.) Following *Gross*, the Court of Appeals for the Third Circuit confirmed that the *McDonnell Douglas* burden shifting framework is used when a plaintiff does not present direct evidence of discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Considering whether the plaintiff had presented direct evidence of age discrimination, in *Palmer* the Circuit Court concluded the District Court did not err in finding that the employer's remark that the plaintiff might be "too old to change industries" was not legally sufficient direct evidence of age discrimination. *Id.* In doing so, the Circuit Court set out the meaning of "direct evidence" in the ADEA context following *Gross*: "Direct evidence must be sufficient on its own to allow a factfinder to determine that age was the but-for cause of the termination decision. This is a high hurdle; the evidence must demonstrate "*without inference or presumption*" that age discrimination was the but-for cause of termination." *Id.* (quoting *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994)). *Palmer* distinguished direct-evidence definitions formulated before and after *Gross*, clarifying that the earlier formulations preceded

*Gross's* "but-for" standard.  *Id.* at *3.  Therefore, comments which were held to be direct evidence under the earlier "less stringent *Price Waterhouse* [*v. Hopkins*, 490 U.S. 228 (1998)], mixed-motive causation standard and burden shifting analysis, do not stand for the proposition that the comments at issue in those cases . . . are properly viewed as direct evidence that age was the but-for cause of the firing decision." *Palmer*, 2016 WL 6575073, at *3.  Although direct evidence relieves the plaintiff of making a *prima facie* showing of age discrimination under the burden shifting standard (showing the plaintiff was forty years of age or older, the defendant took an adverse employment action against the plaintiff, the plaintiff was qualified for the position, and the plaintiff was replaced by another employee who was sufficiently younger to support an inference of discriminatory animus, *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009)), in a pretext case the plaintiff still has the "burden of raising a factual dispute that the defendant's proffered reason [for the adverse action] was a pretext and that age was the but-for cause of the decision.  2016 WL 6575073, at *4.

In this case Plaintiff cites numerous examples of statements held to be direct evidence, and argues that statements made here were more direct.  (Doc. 52 at 3-4.)  Because the cited cases predate *Gross's* more stringent standard and because this is a pretext case where Defendant assumes *arguendo* that Plaintiff has

16

established a *prima facie* case of age discrimination (Doc. 35 at 6), the Court will not decide whether evidence proffered satisfies the "direct evidence" standard.  The proper focus in this case is whether Plaintiff has presented sufficient evidence to show that Defendant's proffered reasons for its adverse actions are pretextual.

Once a defendant satisfies the burden of production of offering "evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the [adverse action]," the burden shifts back to the plaintiff. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).  The plaintiff may then survive summary judgment "by submitting evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

*Keller* then sets out the requirements for satisfying the first prong of the pretext analysis.  *Id.*

> "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the nonmoving plaintiff must demonstrate such

17

> weaknesses implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." [*Fuentes* 32 F.3d] at 765.  As another court of appeals has put it, "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge.  The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

130 F.3d at 1108-09.

Under the second *Fuentes* prong, the plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Keller*, 130 F.3d at 1111 (quoting *Fuentes*, 32 F.3d at 762).

Although Defendant argues that Plaintiff's age and gender discrimination claims cannot survive summary judgment because she relies heavily on her own testimony and that testimony is not adequate to withstand summary judgment (Doc. 44 at 3), the Court concludes that Plaintiff has raised questions and come forward with evidence which would allow a reasonable factfinder to conclude that Defendant's proffered reasons for demotion and discharge were pretextual.  Asserting that the reasons given for her demotion and termination are not worthy of credence, Plaintiff first points to her employment tenure which included numerous promotions and

18

positive reviews prior to Mr. Peterson becoming her supervisor and, more importantly, she points to Mr. Peterson's numerous disparaging remarks about her age, his disdain for working with older women, and derogatory statements about females in general.  (Doc. 40 at 23.)  Testimony about comments made by decision makers in this case, if believed, would be indications that age and/or gender played a role in the decisions to regrade Plaintiff's position and/or terminate her.  Furthermore, as set out in the Background section of this Memorandum, the parties' assertions about the regrading of Plaintiff's position, the survey investigation and interviews, and the reasons for Plaintiff's ultimate termination readily demonstrate that operative facts are at issue.

Defendant's reliance on *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999), for the proposition that the case must be dismissed because Plaintiff relies only on her own testimony is misplaced.  (Doc. 44 at 3, 5.)  First, Ms. Suda-Ruskey's verification of Plaintiff's complaints about ageist and sexist behavior (Doc. 40-5 at 42) must be viewed at this stage of the proceedings as evidence supportive of Plaintiff's testimony.  Second, in *Pamintuan*, the Circuit Court affirmed the grant of summary judgment on the basis that the plaintiff's testimony was limited to the claim that her job performance was not deficient-- she did not claim that criticisms of her performance were incorrect or that the internal review process produced findings that were

untrue.  192 F.3d at 387.  Here, Plaintiff claims both.  As noted in *Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990), a plaintiff's deposition testimony may be sufficient to create a genuine issue of material fact about a disputed issue--"[d]iscriminatory conduct is often subtle and difficult to prove. For this reason, our legal system permits discrimination plaintiff to prove their cases wtih circumstantial evidence."  896 F.3d at 800 (citing *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987); *Graham v. F.B. Leopold Co., Inc.*, 779 F.2d 170, 173 (3d Cir. 1985)).

Here, as in *Wright*, the issue of pretext turns largely on the issue of credibility.  *See* 896 F.3d at 800.  Therefore, the Court must deny summary judgment on Plaintiff's age and gender discrimination claims.

## C.   *Retaliation*

Defendant argues it is entitled to summary judgment on Plaintiff's retaliation claims because she cannot demonstrate a causal connection between any protected activity and Defendant's actions and, therefore, she cannot establish a *prima facie* case of retaliation.  (Doc. 35 at 10-13; Doc. 44 at 7-8.)  Plaintiff responds that she has submitted sufficient evidence to sustain her claims for retaliation based on her complaints of age and gender discrimination.  (Doc. 40 at 18-20; Doc. 52 at 6-10.)  The Court concludes Defendant has not shown it is entitled to summary

judgment on Plaintiff's retaliation claims.

Absent direct evidence, a court is to use the *McDonnell Douglas* burden shifting framework to analyze retaliation claims under the ADEA, Title VII, and the PHRA. *Daniels v. School Dist. of Philadelpia*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted).

> Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim must first establish a prima facie case by showing "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."

*Id.* (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Here Defendant primarily focuses its argument on the assertion that Plaintiff cannot satisfy the third element of a *prima facie* claim: the claim fails the causal connection requirement based on the lack of temporal proximity between her complaints of alleged discrimination and her demotion and/or termination.[2]  (Doc. 35 at 11-13; Doc. 44 at 7-8.)

---

[2]  Defendant asserts that any claim of retaliation related to Plaintiff's feedback regarding Mr. Peterson on the leadership survey is barred because it was not protected activity and Plaintiff did not include such a claim in her EEOC and PHRC charge of discrimination.  (Doc. 35 at 13.)  Plaintiff does not appear to pursue a retaliation claim on this basis (*see* Docs. 40, 52) and, therefore, the Court will not address Defendant's related arguments.

*Daniels* notes that retaliation cases often turn on whether a plaintiff can establish the causal connection requirement.   776 F.3d at 196.

> "We consider a 'broad array of evidence' in determining whether a sufficient causal link exists [for a plaintiff] to survive a motion for summary judgment." *LeBoon* [*v. Lancaster Jewish Community Center*, 503 F.3d 217, 232 (3d Cir. 2007)].  To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if "unusually suggestive." *Id.*; *Marra*, 497 F.3d at 302.  In the absence of a such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action.  *See LeBoon*, 503 F.3d at 232-33; *Marra*, 497 F.3d at 302; *Farrell* [*v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)].  The plaintiff, however, cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted.  *See Andrioli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007); *Moore* [*v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006)]; *cf. Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct.")

776 F.3d at 196-97.

Defendant'S argument that Plaintiff's retaliation claim fails for lack of temporal proximity is unavailing for several reasons.

First, Defendant's own chart indicates that Plaintiff's complaints into "early summer 2014" may have sufficient temporal proximity to the June 23, 2014, position downgrade to alone satisfy the causation requirement. (Doc. 44 at 7.)  Second, Defendant's chart measures the time period between the 2014 complaints and the downgrade and termination to be periods as short as one month. (*Id.*)  A one-month time period coupled with other evidence has been found suggestive of discrimination.  *See*, *e.g.*, *Shenk v. Pennsylvania,* No. 1:11-CV-1238, 2013 WL 1969311, at *8 (M.D. Pa. May 13, 2013); *see also Stewart v. Bally Total Fitness*, No. 99-3555, 2000 WL 1006936, at *5 (E.D. Pa. July 20, 2000).  Third, Plaintiff has pointed to evidence suggesting inconsistencies in the reasons for Defendant's adverse actions which is evidence relevant to the causal connection inquiry.  *Daniels*, 776 F.3d at 196. Similarly, evidence of pretext discussed above can be considered "evidence suggesting that the employer had a retaliatory animus when taking the adverse action."  *Id.*

These considerations clearly show that Defendant has failed to show it is entitled to summary judgment of Plaintiff's retaliation claims on the bases alleged.  Therefore, Plaintiff's retaliation claims go forward.

### III. Conclusion

For the reasons discussed above, Motion of Defendant, Mondalez Global LLC, for Summary Judgment (Doc. 34) is GRANTED IN PART and

DENIED IN PART.  The motion is GRANTED as to Planitiff's PHRA claims based on her demotion; the motion is DENIED in all other respects. An appropriate Order is filed simultaneously with this Memorandum.


                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge
DATED: February 3, 2017

24